**Charles ASHLEY**

v.

**EPIC DIVERS, INC. and CIGNA Insurance Co.**

**Civ. A. No. 91–639.**

United States District Court, E.D. Louisiana.

Dec. 4, 1991.

Philip E. Henderson, Houma, LA, for plaintiff.

Peter L. Hilbert, Jr., New Orleans, LA, for defendants.

McNAMARA, District Judge.

Before the court is Defendants' Motion for Summary Judgment. Plaintiff opposes this Motion. These Motions are before the court on briefs, without oral argument.

Plaintiff, Charles Ashley, was a diver employed by Defendant, Epic Divers, Inc. Defendants, through their Motion, seek a judicial declaration that Plaintiff was not a seaman within the meaning of the Jones Act, 46 U.S.C.App. § 688, at the time of his alleged accident. For reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED.**

■ To qualify as a Jones Act seaman, the Plaintiff must prove that he performed a substantial amount of his work aboard a vessel or was permanently assigned to a vessel or an identifiable fleet of vessels and that his work duties contributed to the mission of the vessels. *Offshore Co. v. Robison,* 266 F.2d 769 (5th Cir.1959); *Munguia v. Chevron U.S.A.,* 768 F.2d 649 (5th Cir.1985). The Fifth Circuit further defined the fleet requirement for Jones Act status in *Barrett v. Chevron U.S.A., Inc.,* 781 F.2d 1067, 1074 (5th Cir.1986), holding:

> By fleet we mean an identifiable group of vessels acting together or under one control. We reject the notion that fleet of vessels in this context means any group of vessels an employee happens to work aboard. Unless fleet is given its ordinary meaning, the fundamental distinction between members of a crew and transitory maritime workers . . . is totally obliterated.

■ The *Barrett* court established one exception to its fleet requirement, noting:

> [w]e do not decide whether the same principle governs the crewmember status of the maritime worker who spends virtually all of his time performing traditional seaman's duties—work closely related to the *movement* of vessels—but does his work on short voyages aboard a large number of vessels. *see Bertrand v. International Mooring & Marine, Inc.,* 700 F.2d 240 (5th Cir.1983). Bertrand and his fellow anchor

handlers are good examples of this type worker. *Id.* at 1075 n. 13 (emphasis added).[1] Therefore, only a very limited type of maritime worker is exempted from the *Barrett* rule that a worker must work aboard a fleet of vessels under one ownership or control to qualify as a Jones Act seaman.

Plaintiff argues, and Defendants agree, that diving is traditional maritime activity. Plaintiff cites *Wallace v. Oceaneering Int'l,* 727 F.2d 427, 436 (5th Cir.1984)[2], for the proposition that diving "embodies the traditional and inevitably maritime task of navigation, [and] has the legal protections of a seaman when a substantial part of his duties are performed on vessels."[3] However, neither *Wallace,* nor subsequent cases addressing the status of divers, suggest that diving, in and of itself, is closely related to the *movement* of the vessel.

Moreover, the Fifth Circuit was certainly mindful of its earlier decision in *Wallace* when in *Barrett,* it carved out an exception to the fleet requirement. In *Barrett* footnote 13, the court provided a specific example of the type of maritime worker who is exempt from the fleet requirement, citing the Plaintiff in *Bertrand,* an anchor handler, as a good example. *Barrett,* 781 F.2d at 1075. The *Bertrand* court described the anchor handler's duties as "securing anchors loosened by bad weather and relocating drilling rigs", and "readying the vessel for its mission";

1. In *McDermott Int'l, Inc. v. Wilander,* 498 U.S. 337, 111 S.Ct. 807, 817–18, 112 L.Ed.2d 866 (1991), the Supreme Court held that a worker need not aid in the navigation of a vessel in order to qualify as a seaman under the Jones Act. Reaching this conclusion, the Court affirmed the *Robison* test for seaman status, noting "[t]he Fifth Circuit correctly determined that, regardless of its language, [the Supreme Court] was no longer requiring that seamen aid in navigation. . . . *As part of its test for seamen status, Robison* requires that a seaman's duties 'contribute to the function of the vessel or the accomplishment of its mission.'" (emphasis added).

The Supreme Court specifically noted that the *Robison* requirement that a seaman must contribute to the vessel's mission was only part of the test for seaman status. As noted in the text of this Minute Entry, *Robison* further requires that the seaman satisfy the fleet requirement. *Wilander,* therefore, does nothing that would

broaden the narrow exception to the fleet requirement found in *Barrett* footnote 13.

2. Note that the Fifth Circuit decided *Wallace* almost two years before deciding *Barrett.*

3. It should be noted that *Wallace* is factually distinguishable from the case before this court. In *Wallace,* the parties stipulated that Wallace contributed to the mission of a vessel in navigation, and that Wallace was exposed to maritime perils with continued regularity. Wallace worked 95 percent of his time offshore, and ate and slept on the vessel. The vessel's mission involved drilling operations, and the court noted that the "services of the diving crew were essential to the completion of the drilling operation and to the *movement* of the [vessel] from one drilling spot to another." Although injured on a temporary assignment, Wallace was permanently assigned to a different vessel. *Wallace,* 727 F.2d at 427, 431–33. (emphasis added).

noting that "the anchorhandlers' work from the vessels was their primary duty, and not merely accidental to work on shore or *a nonvessel. Bertrand v. Int'l Mooring & Marine, Inc.*, 700 F.2d 240 (5th Cir.1983). In providing this example, the *Barrett* court took pains to emphasize that the exception to the fleet requirement was limited to a narrow type of maritime worker.

■ Mindful of the above, this court examined the particular diving assignments of this individual Plaintiff, concluding that he is not the type of maritime worker that the Fifth Circuit intended to exempt from the fleet requirement. Plaintiff performed five diving jobs while employed by Epic Divers, Inc., from August 16, 1990, until his alleged injury on November 20, 1990.[4] None of these diving jobs were directly related to the *movement* of the vessel, as required by the court in *Barrett.*

The first job was for Epic's customer Torch, Inc. Plaintiff dove for four days off a Torch, Inc. pipeline barge in the Gulf of Mexico, checking or replacing anodes on offshore pipelines. Plaintiff worked strictly as a diver, he performed no maintenance or navigational functions.[5]

The second job was also for Torch, Inc. Plaintiff dove for four days off Torch, Inc.'s barge, the LITTLE SHANE, in the Gulf of Mexico, setting a riser and boat bumpers on an offshore platform. Again, Plaintiff worked strictly as a diver.[6]

The third job was for Epic's customer, Chevron, Inc. Plaintiff dove for one day off the rear deck of a mud boat outside Venice, Louisiana, surveying a mud mat underneath an offshore platform.[7]

The fourth job was also for Chevron, Inc. Plaintiff worked for five days from small self-propelled barges, installing a clamp and scrapping old flow lines in Chevron's Quarantine Bay field. This job was performed in shallow water, allowing Plaintiff to stand with his head above water for a good portion of the job.[8]

The fifth and final job was for Epic at Avondale. Plaintiff was injured on the first day diving off a small boat in the Mississippi River, attempting to place a plywood cover over an open grate beneath the water line of a Navy ship.[9]

As is clear from this recitation of Plaintiff's diving activity, none of Plaintiff's work can be defined as "traditional seaman's duties— *work closely related to the movement* of vessels . . ." as demanded by the Fifth Circuit in *Barrett. Barrett,* 781 F.2d at 1075 (emphasis added). None of Plaintiff's diving work was closely related to the movement of vessels, nor was Plaintiff's work to service or aid the vessels. Plaintiff's work, while traditional maritime activity, may have aided in the *mission* or *task* of the vessel, but was in no way related to the *movement* of the vessel.

Failing to fit the narrow exception created by the *Barrett* court in footnote 13, Plaintiff must meet the court's fleet requirement. The fleet requirement was affirmed in several post-*Barrett* Fifth Circuit decisions, cited by both parties, which hold that a worker who is not assigned to an identifiable fleet of vessels cannot have Jones Act seaman status. *see Lirette v. N.L. Sperry Sun, Inc.*, 831 F.2d 554 (5th Cir.1987); *Ardleigh v. Schlumberger, Ltd.*, 832 F.2d 933 (5th Cir.1987); and *Langston v. Schlumberger Offshore Serv., Inc.*, 809 F.2d 1192 (5th Cir.1987).

Plaintiff argues that he satisfies the fleet requirement because he spent eight out of his fourteen days of employment with Epic Divers, Inc. working off Torch, Inc. vessels.

---

4. Plaintiff dove on fourteen days in performing these five jobs.

5. *see* Defendants' Memorandum at p. 2 (citing deposition testimony), and Plaintiff's Memorandum in Opposition at p. 2.

6. *see* Defendants' Memorandum at p. 2–3 (citing deposition testimony), and Plaintiff's Memorandum at p. 2.

7. *see* Defendants' Memorandum at p. 3 (citing deposition testimony), and Plaintiff's Memorandum at p. 3.

8. *see* Defendants' Memorandum at p. 3 (citing deposition testimony), and Plaintiff's Memorandum at p. 3.

9. *see* Defendants' Memorandum at p. 3 (citing deposition testimony), and Plaintiff's Memorandum at p. 3.

The court disagrees with Plaintiff's interpretation of the fleet requirement. *Barrett,* and the cases following, define "fleet" narrowly, giving the word its "ordinary meaning". The nexus binding a fleet of vessels must be common ownership or control. *Lirette,* 831 F.2d at 556. As stated in *Barrett,* "We reject the notion that fleet of vessels in this context means any group of vessels an employee happens to work aboard. Unless fleet is given its ordinary meaning, the fundamental distinction between members of a crew and transitory maritime workers ... is totally obliterated." *Barrett,* 781 F.2d at 1074. Such is the case here.

Under Fed.R.Civ.P. 56(c), summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Fifth Circuit, addressing the summary judgment standard under Fed.R.Civ.P. 56(c) has ruled:

> [I]f the pleadings and accompanying evidentiary materials, when viewed in the light most favorable to the non-moving party, raise no 'genuine issue as to any material fact,' and it appears that the moving party is entitled to judgment as a matter of law, the court may properly enter judgment.

*Walker v. U.-Haul Co. of Miss.,* 734 F.2d 1068, 1070–71 (5th Cir.1984) (citation omitted). In *Celotex Corp. v. Catrett,* 477 U.S. 317, 321, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), the Supreme Court stated:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

In this case, the facts are not in dispute. As outlined above, the parties provide similar accounts of Plaintiff's diving activity while employed by Epic Divers, Inc. In dispute are the legal conclusions to be drawn from these facts. This court finds that Plaintiff is not the type of maritime worker the Fifth

Circuit meant to exclude from the fleet requirement outlined in *Barrett.* Further, Plaintiff's diving work for Epic Divers, Inc. on various vessels failed to satisfy the fleet requirement. Given these undisputed facts, this court finds as a matter of law that Plaintiff was not a seaman within the meaning of the Jones Act. Accordingly:

Motion of Defendants for Summary Judgment is **GRANTED.**